**REYNOLDS, Plaintiff-Appellee, v. CHERRINGTON, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 3493. Decided May 12, 1943.

Ray E. Hughes, Columbus, H. Alfred Glascor, Columbus, for plaintiff-appellee.

Addison, Isaly & Addison, Columbus, for defendants-appellants.

## OPINION

By BARNES, P. J.

The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

Counsel for both parties have inadvertently transposed the names of the parties, in that Cherrington is named as defendant-appellant, v Reynolds, plaintiff-appellee. Under the present law the title of the case never changes, and the caption should appear as in this opinion.

Plaintiff through his petition filed in the trial court sought damages in the sum of $5000.00 by reason of personal injuries claimed to have been sustained through the negligence of defendant in failing to keep premises owned by him and located at 907-911 Mt. Vernon Avenue, Columbus, Ohio,

in proper repair. The defendant filed answer, admitting ownership of the described premises and their occupancy by tenants and denying all other allegations of the petition, including that of claimed actionable negligence.

The case was tried to a jury and verdict returned for plaintiff in the sum of $500.00. Motion for new trial was duly filed, overruled and judgment entered on the verdict.

Within the statutory time the defendant took the necessary steps through which the case was lodged in our court.

. Counsel representing the respective parties have filed very able and comprehensive briefs, and we are also favored with the written opinion of the trial court in overruling the motion for a new trial.

The following short statement of facts is essential to a proper understanding of the issuable questions and the manner in which the claimed errors arise.

The premises described as being located at 907-911 Mt. Vernon Avenue, Columbus, Ohio, consist of a two-story brick building facing north. A basement is constructed under the entire building. On the ground floor are two business rooms, one occupied as a restaurant, and the other as a pool room. Each storeroom had front door entrances and rear doors. There were also inside entrances to the basement under each store. The rear doors opened onto a cement construction, spoken of by various witnesses and the parties as a porch or areaway. The east side of the building came up to the alley which coursed south from Mt. Vernon Avenue. The cement construction likewise joined the alley on the east and extended west a distance of approximately 50 feet. The width of this cement construction was a little less than 10 feet.

The second floor of the brick building contained four apartments. There was a front entrance to these apartments and also a rear entrance by way of a stairway down to the alley. The roof over the building sloped from the front to the rear and extended beyond the brick construction so as to make a covering for the second floor porch, corresponding in size to the cement construction heretofore referred to. This second story rear porch was supported by posts which extended from the bottom to the roof. A stairway was constructed from this second floor near the southern edge of the porch, and in an easterly direction down to the cement construction and about three or four feet from the alley. This stairway was partially enclosed on its southern side by a lattice work, but was open on its northern side. A cement slab

was constructed at the bottom a little higher than the porch or areaway construction and extended to the alley. Immediately back of these storerooms were outside stairways to the basement. The opening was practically 71 inches from north to south and 64 inches from east to west. A metal frame was encased in the cement construction and on a level therewith so as to permit the installation of metal doors hinged to this framework. Each cellarway had two doors, both of which would lift up. The hinges were both to the east and west of the opening. When these cellar doors were closed they were level with the cement construction. Aside from the stairway heretofore described the porch or areaway was open and unobstructed through its entire length of approximately 50 feet, and its width of practically 10 feet. The tenants in the upstairs apartments did not use the basement under storerooms except that some meters and other utility accessories were located under the storeroom next to the alley. The fuse boxes for the electric lights were likewise located in this basement, and one witness testified that he went down this outside stairway on behalf of one of the tenants in the upstairs apartments for the purpose of replacing a burned out fuse. There was evidence that the occupants of the downstairs storerooms, together with other employees used this back cement porch or areaway as a means of egress and ingress from the alley. Apparently part of the lot immediately south of the cement construction was not included in any of the leaseholds. At the time of the accident herein mentioned, this lot was unoccupied, but previously had been used as an automobile wrecking lot. There was also evidence that patrons of the restaurant and also the pool room used this rear cement porch or areaway as a means of ingress and egress to the respective places of business. Storeroom 907 was the pool room, and 911 was the restaurant, the latter being located on the alley. The description of the premises leased as disclosed from the executed leases introduced in evidence was very meager. One description was "Store room at 907, Mt. Vernon Avenue", and the other "Room 911, Mt. Vernon Avenue". It thus is seen that under the express terms of the leases the basement and rear porches were not mentioned. The trial court held, and we think correctly so, that these were appurtenances and were included in the leases by implication. The porch was also used as a passageway.

On October 5, 1939, plaintiff sought to enter the storerooms in question by the rear entrance. He first started to the rear

door of the restaurant, then changed his mind, intending to go to the pool room. In so doing he passed over the metal door when the same gave way precipitating him downward, scraping his shinbone causing a persistent and rather severe injury. It developed that the hinges on the door had rusted off. When the plaintiff stepped on the door it slipped and dropped downwards. This was the specific condition complained of. There was evidence that this defective condition of the hinge had been in existence for sometime, and by reason thereof it was urged that the plaintiff either knew of such defective condition or in the exercise of ordinary prudence in the care of his property should have discovered such condition and corrected it. It was the contention of defendant that he had no control over the premises by reason of the fact that the same were occupied by tenants who had the sole control. The law is well defined that where premises are occupied by tenants and who have absolute control thereof, no liability attaches against the landlord for defects arising during the tenancy.

Another principle is equally well recognized that where tenants occupy rooms or apartments and have access thereto through entrances and stairways jointly used, that by reason of such joint use the owner retains a control over such halls and stairways and consequently is liable for negligence in permitting the same to get out of repair through which some tenant or invitee is injured. 24 O. Jur., p. 954, Sec. 208; 16 R. C. L. p. 1072, Sec. 591; Foti v. Lewis, Admr., 27 Oh Ap., 531; Anna Waite v. Thomas Emery's Sons, Inc. (Court of Appeals, First District), 20 O. D. 28.

The trial court found under the evidence presented in the instant case that the case was very close upon the facts and by reason thereof submitted the question of control to the jury under proper instructions.

Counsel for defendant-appellant urges the application of the legal rule of assumed risk. The controlling principle of law was properly charged by the trial court. It is now urged to us that the principle of assumed risk is applicable as a question of law under the undisputed facts. It is pointed out that other persons using this cement walk or stairway discovered the defective condition of the cellar doors and avoided them. One of these witnesses said that he discovered it through stepping on the door and when it slipped, jumped back and avoided any injuries.

We do not think that the evidence of the defective condition was of such character as would be plainly discernible to

a person using the walk as was the plaintiff at the time of his accident. There would be no duty upon the part of the plaintiff to anticipate a defective condition. He would be bound to avoid danger which in the exercise of ordinary care was clearly discernible. It is argued that if the plaintiff in the exercise of ordinary care was not chargeable with notice of the defective condition, that the same principle would apply to the defendant, and that he would not be chargeable with notice of a defective condition unless the same was discernible. We think the rule is somewhat modified as it applies to an .owner chargeable with maintenance and keeping in repair ways where the public are liable to travel. It is a matter of common knowledge that every construction has a life tenure and it is the duty of the owner to look for defects which in regular course do arise. We do not think that the legal principle of assuming risk was present in the instant case.

Counsel for the defendant-appellant further urge that under the facts of the instant case the claimed defects were not the proximate cause of the accident.

This question is urged by reason of the following facts: Plaintiff presented evidence that the metal doors were constructed so as to be fastened by bolts on the inside and that when the bolts were in position the door could not tip, even though the hinges were defective. When these bolts were in position these cellar doors could not be opend from the outside, but only from the inside. Plaintiff presented evidence, rather conclusively establishing that following the accident it was found that these bolts had been removed. It was testified that the purpose of the bolts was to prevent the opening of the cellar doors from outside, but it was also argued that they would answer the further purpose of preventing the door from dropping in. It was not disclosed how long these bolts had been out or by whom they were taken out. The present tenant in this storeroom over the basement, to which this outside cellarway was an appurtenance, had not been a tenant in this room for a very long period of time. Her son, a Mr. Smith, was called as a witness, and he was very active in the operation of this restaurant. According to his testimony they used the cellar very little and never had used the outside cellarway. He did not know that the bolts were provided or when or by whom they had been removed. He did testify that if such bolts were placed under the stairway it would have prevented the cellar door tipping inwardly. We think under this situation the duty rested upon the defendant when he leased the storeroom with the stairway as an appurtenance, to see

that the doors were properly protected with the bolts as originally designed. Had he so done and thereafter the bolts were removed and left out by the tenant occupying the premises, a clear case of proximate cause would have been presented.

Counsel for appellant further urge that the trial court was in error in refusing to admit certain evidence proffered on behalf of the defendant. In substance it was sought to show that a prior tenant of the room occupied by the owner of the pool room had boarded up the porch back of its storeroom and kept the same locked by reason of which the public could not gain entrance through the rear door to this west storeroom. We have no difficulty in determining that the trial court was correct in rejecting this testimony. Even if admitted it seems to us that its probative force would have been more favorable to the plaintiff than to the defendant. There is no question that the owner of this building could make construction on this rear porch so as to remove all opportunity of joint use. If a prior tenant did make such a construction, it would enure to the benefit of the defendant so long as it remained. However, this construction was removed sometime by somebody, but the evidence does not disclose when or by whom. The legal effect of such removal would be to restore this areaway to an implied invitation for its joint use. The defendant also introduced testimony that at some time a wire fence approximately four feet high had been placed across this areaway, at or near the dividing line of the two stores, but it had been removed prior to the time of the accident. Further, it had not been there for a considerable time prior to the accident. Following the accident the defendant caused to be constructed another wire fence at about the same location, 10 feet in height, but this subsequent construction cannot have a retroactive effect.

We are very much impressed with the decision of the trial court in his overruling of the motion for a new trial. It presents a very able analysis of the legal principles involved and we are happy to adopt it as a part of this opinion.

Finding no prejudicial error, the judgment of the trial court will be affirmed and costs adjudged against the defendant-appellant. The cause will be remanded for collection of costs in this Court and such other and further proceedings as are authorized by law.

HORNBECK and GEIGER, JJ., concur.